Good morning. The first case today is number 22-2163, United States v. Christopher Dunn. Mr. Campbell. Good morning, Your Honor. Matt Campbell, Federal Public Defender for the District of the Virgin Islands. On behalf of Christopher Dunn, I'd like to reserve five minutes for rebuttal. There are several errors at trial that are raised in the briefs. Today, I'd like to focus on those involving Candace D'Orazio Martinez while submitting on the briefs regarding the erroneous prosecutorial closing arguments. And I'd like to start by addressing Martinez's testimony that he had seen one gram of marijuana in cigarettes. And at the outset, well, it is certainly our position that that was inadmissible. And at the outset, I think it's important to understand what his actual testimony was. And this is located at 207-208. Why was it inadmissible? It was inadmissible because the court admitted it as factual testimony based on personal knowledge. Late witness testimony. Correct. And that is the basis that the court admitted it. But if we look at the testimony actually given, the testimony was that Mr. Martinez, on some unknown number of occasions, had weighed marijuana cigarettes in other cases, completely unrelated to Mr. Dunn's case, and found that there was one gram in those specific cigarettes. Now, if we look at Act 2 of 7, the government strained to try to ask a question of what usually happens, what typically happens. But ultimately, the testimony was, I've weighed some cigarettes in other cases, and they weighed one gram. So the number of instances and the basis for his experience, those all seem like things that go to weight inadmissibility. You could cross-examine the witness on. Why does that make for a reversible error? Because it's irrelevant. What has occurred in other cases that has no bearing on this case is simply irrelevant. The weight of the typical joint is irrelevant. The amount of marijuana in a typical joint is irrelevant. Well, I would take issue with using the word typical, because if we use the word typical, then that denotes an opinion. And in this case, it would denote an expert opinion, because he was testifying based on what he did as a chemist. I take your answer to mean that it would be relevant, but a typical joint has. But you're saying that that's not what happened here. Correct, Ron. I think that I've certainly seen other cases, for example, in this type of situation where the government will notice, let's say, a DEA agent, as an expert, to testify to user amounts versus dealer amounts. That would be a completely separate issue where you get a Rule 16 expert disclosure, and you— So a lay witness couldn't testify as to how much marijuana is in a typical joint? Why couldn't they put out a lay witness and establish a foundation? How often do you smoke marijuana? How do you smoke it? Who do you buy it from? How much does it cost? What's the amount of marijuana in the joint? Wouldn't that all be sort of standard lay testimony, possibly? You know, it's difficult to say. I think as a defense attorney, if we were confronted with that, we would certainly file a motion in limine to oppose it, simply because it's difficult to imagine that a lay witness would be testifying to anything other than what they typically do, which has no bearing on what Mr. Dunn or anyone else would typically do. I'm confused. I thought your objection was that he was an expert, and experts should not be giving lay testimony. Is your objection that it was irrelevant? Is that really the focus of your argument, your brief? Well, Your Honor, I think that the issue is still open. And here, again, the court admitted it as factual testimony by a lay witness based on their own personal knowledge. So what I'm saying is, if that's really what it was, it's irrelevant, or at least under 403. I'm asking, is that the argument in your brief that it's irrelevant? That it's irrelevant and or the prejudice is outweighs the probative value. Well, the court advised the jury that now this is not his expert testimony. He's not testifying as an expert when he says it. So this is unlike other cases where there could be taint or prejudice because a lay witness is actually speaking. I mean, the jury is going to consider it as expert advice. We don't have that situation here. I agree that the court did give that instruction. However, what I think makes it more confusing is that, in essence, later in other places in the record, particularly, I believe at App 210, and then later when we were dealing with motions for due trial at App 499 and 500, the district court actually says, well, his testimony was that that's the most that could fit in the cigarette. Number one, it wasn't. But number two, at various times, that's how the court characterized it. And number three, that's certainly how the government used it. All right, so we have five minutes for rebuttal. You have other aspects of your argument, do you not? I do, Your Honor, and the one that I would briefly like to address is the Rule 16 issue. Before we get into other errors with this expert witnesses' testimony, could you talk with us about why any of it matters in view of Rivera? If all of this is just harmless error, doesn't your focus really need to be persuading us that there's something you put forward to ensure that this was not just harmless?  In regard to the issue that we were just discussing, the one brand per cigarette, that would not be harmless error in light of Rivera, because it relates to the issue of intent to distribute. The intent to distribute issue, even if we accept Rivera's correctly decided, which we don't respectfully, but that's a different issue for a different day. Whether or not Mr. Dunn intended to distribute the marijuana would still be a ripe issue, regardless of whether it was marijuana. The issue then would be, if we assume that Rivera applies, that the issue would be was he in fact only guilty of simple possession. So Rivera doesn't speak to the issue that we've been addressing, namely the one brand per cigarette. Well, you would still have a record that has these large-sized packages that have been sprinkled with laundry detergent, and the jury could make what it wants of that, that would be the full record we were looking at. If the government has met its burden simply by establishing that it's cannabis under the statute, and there's nothing you put forward to show that actually it's hemp, why doesn't that end our inquiry? Because again, all that would show, if the government has satisfied its inquiry that it's a controlled substance by showing that it's cannabis, a non-controlled substance, then the government has satisfied the element that there was possession of a controlled substance. That doesn't satisfy the element of whether there was intent to distribute. And in the government's closing argument, in essence, the government did not argue at any length that, well, there's detergent, there's this, that, and the other thing. The government said, and I don't think the government was contesting this and put up a PowerPoint slide, showing the one brand and then doing the math, and they specifically went through the math of how many cigarettes would have to be smoked. But the jury can do the math. The jury can look at three pounds of marijuana and figure out that this is not intended for personal use. And the fact that there's detergent, there's a certain knowledge that there's something wrong afoot. Your Honor, would that, absent the one brand per cigarette testimony, would that be enough to survive Rule 29? Maybe, probably. However, that's not what happened here. What happened here is that the government used as its primary, if not sole, evidence of intent to distribute Mr. Martinez's testimony. So whether or not— I think that—doesn't the Horne-Starr analysis require us to engage in the counterfactual and try to ascertain what the jury would have done had the government not put that in evidence? Isn't that what's required? Your Honor, that's—I believe the—yes, as a general matter. So let's follow that up and pretend it didn't happen. Isn't it true that the testimony, Dunn's—I don't remember where it came from, but I thought it was clear to the record that Dunn was coming to visit his boys for a week. I believe it was five days, but yes. Right. Well, is it reasonable for a jury to infer that someone's going to personally consume three pounds of marijuana in five days? Well, Your Honor— To Judge Randall's question, isn't it sort of that inference that the jurors could discern, even have the Martinez testimony about what he saw in one joint contained? Your Honor, is that an argument that the government could have made had there been no Martinez testimony about this? Yes, I assume—I would say that is an argument that the government could have made. No, but it's our job—I'm concerned to determine what the jury would do with that information. I'm asking you, what would the jury do with the information that this guy has three pounds of marijuana and he's coming for five days? The reason I'm asking that question is that if he had three pounds of marijuana and he was coming here for two years, then it's not really plausible. It could be quite likely that he's bringing down his personal stash to consume himself over a period of months or years, right? But five days, it seems rather implausible as for personal consumption, doesn't it? Your Honor, can I— Go right ahead. Okay. Your Honor, I want to address the concept of harmless error. While I understand that the court does have to address the issue of harmless error, I'm not sure that that means that the court has to, in essence, rewrite the trial. And what I'm getting at is this is not a situation where the government made multiple—three, five—arguments as to why the evidence showed intent to distribute. The government made one argument, and it is our position that that was based on inadmissible testimony. So to rewrite the entire trial transcript and say, well, the government would have argued this, it might have argued this, it may have said that, I don't think that's required by harmless error analysis. I think most harmless error analysis addresses, well, there were these three arguments. Even if we take this one away, the other two were persuasive. We don't have that here. Don't we look for harmless error at what the record has for the jury to examine by way of evidence? I mean, whether that rendered an effective argument for closing or not, for harmless error purposes, aren't we looking back to see what evidence was in the record before this jury? And as Judge Harden said, counterfactually, could a jury, with that evidence, would they be likely to reach the same result? Well, again, I think it's important to distinguish between the way Your Honor began the question portion of could versus likely. To me, those are two different things. I'm not going to stand here and argue that the jury couldn't, that we would have been entitled to a Rule 29 absent this evidence, although I certainly would have made that motion and argued for it. But I think it's much more difficult to argue that it was likely or that it's more probable than not, because we have no evidence of this. And again, typically, when the government wants to do what it did here, which is introduce, under the guise of lay testimony, what amounts to expert opinion testimony, they note it, and they have an expert to testify. I would concede that if we had one of these boat cocaine cases where we've got 1,000 kilos on a boat, probably the jury can figure that one out. But exactly where the line divides as to when a jury that has no testimony about user amounts versus dealer amounts or the like sits, I think that's a debatable proposition, and I don't think it needs to be answered. Before you finish, because I think your colleague is going to address this, you want to talk about Rule 16. You received a notice. You received the test results. You received the graph in March, or in May, May 11th. And the trial was November 30th. Correct. You saw no discovery whatsoever regarding the expert in the interim. Is that not correct? That is correct. Okay. Didn't you have to make a motion for discovery before trial as compared to showing up at trial and saying, oh, this was deficient? No, I don't believe I did. Because the government presented its reports, and I don't think there's any dispute about what they presented. That's set forth in the record. And those reports were entirely consistent with the types of reports that were being issued up to at least early in 2021, which is the first time that the Farm Bill of 2018 and the 0.3% was addressed in the Rivera case. I'm talking in the Virgin Islands. I know it was addressed in other districts and other surveys. So that report was entirely consistent with what they had been doing up until then. So looking at the report, it was not apparent that the government had some – that the analysts had some unspoken method for looking at that information. And in fact, at one point in the trial transcripts – I don't recall it off the top of my head – the government even mentioned when this issue came up in arguing about the 0.3%, the government mentioned that that report was done before Rivera. So nobody had – so Mr. Martinez was not put on notice that the 0.3% was an issue. But the 0.3% really wasn't an issue because he never contended – he never raised that issue under Rivera. So how does it matter? Well, Your Honor, it matters because his testimony ultimately ended up being – well, in Lord Deere, his testimony was he used two things. He used the height of the spike and he used the fact that there were no other cannabinoids present. Right, and the height of the spike itself would be enough. Except that that was excluded. So then what he did was he gave – the district court excluded him from testifying about the height of the spike. So then he proceeded to change his testimony in front of the district court, in front of the jury, and then testified that the only thing that was relevant for his determination was that it was not another cannabinoid beyond delta-9-THC. So his testimony at trial by his own admission before the jury, I mean, wasn't really true or at least not complete. And the whole analysis of the cannabinoids is what was never included in the materials. And it's our position that Rule 16 requires not just the data but the basis and methodologies. Okay. So you've been very patient. Thank you. All right. Thank you. We'll hear from Mr. Sleeper. Good morning, Your Honors. I'm Sleeper for the United States. I can certainly speak more to Rule 16 if the court would like to ask questions about that. But I would say the government's position is that the Rule 16 issue, the expert testimony issue, and the request for mistrial are really foreclosed under harmless error review after Rivera. Even if this testimony about it not being should have been excluded for Rule 16 violations should have been excluded, you know, it's unreliable. There's just no basis for concluding that there was any harm to the defendant. What do you do with the point that your colleague has made that there's not otherwise evidence of intent to distribute, at least through what constitutes personal use quantities versus distribution quantities? Your Honor, a few responses to that. Just to sort of lay out the arguments, the defendant in his brief lays out four arguments that he made to the district court. He then argues two of those arguments in his brief. One is the 403 argument. The other argument is the dual capacity testimony argument. Absent from that brief is argument that this was admitted as improper opinion testimony and should have been excluded under Rule 16 as expert testimony. So that seems to be the argument that's being pushed here, but that was waived. It wasn't asserted in the opening brief. Now, it is referenced in the reply brief, but the reply brief also includes no citation to any case law distinguishing between lay testimony and expert testimony. So I guess my first argument would be is that this argument has been waived at the Court of Appeals. This argument about it being improper lay testimony has been waived at the Court of Appeals. You mean his irrelevance argument? No, Your Honor. So there's one argument that's made, and that's 403. Right. And while it's phrased as a 403 argument, it actually ends up looking a lot more like a 401 argument. It's an argument that this was anecdotal, it wasn't probative, and for that reason, it was irrelevant. The whole point is that that's because his argument is that it's lay testimony, that if anything, it should have been expert testimony, and then they're still over. In terms of the expert testimony, that's its own problem, but only if it's just viewed as lay testimony, then it's not relevant because it's just one individual's personal experience with a very limited quantity. And I understand that's what's being said here, Your Honor, but I think if you take a close look at the opening brief, that's not really the argument that's being brought there. There's certainly no case law or anything arguing the distinction between lay and opinion testimony in that. So it is the government's position that insofar as the defendant is contending that this was improperly admitted lay testimony, that that is a waived argument. But let's put that to the side and assume that we don't view it as waived or forfeited. On the merits of it, then, what's your argument? Well, Your Honor, if the court were to decide this on that issue because it was waived, the government would request to do supplemental briefing on it because we don't think it was presented in the brief. But jumping into the issue nevertheless and trying to address it as best as we can, I think we need to look at sort of the counterfactual here. Let's assume— Let's be clear. I think the government did address it. You talked about security instruction as part of your response to the brief. Well, no, Your Honor. So there was a large number of issues that were raised by the defendant. One was 403. One was dual-capacity testimony. And the third, which we submit was waived, is this argument that it was improperly admitted as lay testimony. Now, we addressed instructions as to the second argument, this issue of dual-capacity testimony, whether it was improper to allow the witness to testify as both an expert and a lay witness. That's a separate argument from when he testified as a lay witness, should that have only been able to come in as expert testimony. And then the argument that that really flows into is this had to have been expert testimony. So the defendant would be contending that there had to be Rule 16 disclosures, that the judge would then have had to exclude this testimony for failure to provide the Rule 16 disclosures. And then from there, that even if this was excluded, the jury would have concluded that three pounds of marijuana in a vacuum-sealed bag covered in laundry detergent when the defendant was coming down to see his boys for five days was not intended to be distributed. Certainly the wrapping and the laundry detergent would suggest that there's something amiss here. But what else is there in the record as to personal use quantities other than Martinez's testimony? Well, other than Martinez's testimony, I think that would be exactly what the court has identified. It's the fact that the vacuum-sealed packages covered in laundry detergent, that the length of his trip, he was coming to see other people potentially. I think it's those other things that could indicate that this was a possession with intent to distribute. Beyond that, that's sort of a harmless error argument, that maybe that's putting the cart before the horse. The government doesn't concede that this was improperly admitted as disliked testimony. As this court said in Fulton, when a lay witness has particularized knowledge by virtue of her experience, she may testify even if the subject matter is specialized or technical. Because the testimony is based upon the lay person's personal knowledge rather than on specialized knowledge within the scope of Rule 702. While this information was obtained by virtue of the chemist's appointment as a chemist, this is just not the type of evidence that the government submits as expert testimony. This may not quite be the context in which this court is addressing, but if you look at this one, it's talking about if someone is giving a lay witness opinion testimony, they can testify to weight. For example, let's say they're looking… Your point is that people without scientific training know what weights and measures are and how to use a scale. Absolutely, Your Honor. Absolutely. This is just not the type of testimony that is… Pardon me, but isn't it true that he didn't testify as was typical? I don't remember that word being used. Your Honor, I also don't remember that word being used, and let me… I believe I have exactly what was said. I believe what he said was when he weighed it, this is what it would weigh. You know, I don't think that… But it was… it could have been… he could have been crossing his hand with, well, isn't it possible that people who consume marijuana in cigarette form or another form would use higher quantities than the quantity you just described? Absolutely not, Your Honor, and he was… He could have been grilled on that. He was grilled on that, Your Honor. He was asked, have you seen all of the marijuana cigarettes? No, he admitted that he didn't. He admitted that whatever his experience was was not really all the marijuana cigarettes in the world and all that. And he admitted that it could be consumed in different ways as well when he was asked about that. You know, there was certainly an opportunity for cross-examination. The defendant did cross-examine him on this, and the government just admits that this is just not problematic for this to have come in as an opinion test. Sorry, excuse me. It didn't come in as an opinion test. It's not problematic for it to come in as a lay witness testimony. It's also not 403 because it was, in fact, relevant. It provides a framework. It does go to the weight but not the admissibility of the evidence, and certainly the defendant took all options to attack the weight of that testimony. So under those three circumstances, even if that argument that it should have been expert testimony were correct and were not weight, we don't think it would have any effect. Let me ask you a question about Martinez's expert report. It's fairly short. Would it have satisfied Rule 16 if that report had been one sentence that said, quote, I administered the colorimetric test, conducted microscopic analysis, and performed the GCMS test, and I concluded that the substance was marijuana? Would that suffice to be an expert testimony in a case like this? Your Honor, you're hypothetical. Would the government have also provided the underlying data, the peaks and all of that, or just that one piece? Yes. Let's say that his report was one sentence I just described, and there were attachments to that with the results of the testimony. Your Honor, obviously that would be a more difficult case because we are talking about substantial compliance. So to the extent that any bit is taken away is less compliant and much more of an argument that it's less close to substantial compliance. I think that in those circumstances, we could still make the same arguments. We would be saying, look, it identified the testing that was done or provided the data and indicated that from that data, the chemist was able to conclude that this was, in fact, marijuana. We are certainly a more difficult case, but again, if the defendant did not move prior to trial for some more explanation of that, I think we could also argue, as we do here, that the opportunity to get that further discovery had been waived by failure to do so. And I can speak more to Rule 16 in the expert testimony and also the request for mistrial, but I really do think Rivera precludes those arguments there. And why is that? Yes, Your Honor. So the only testimony that is challenged under Rule 16 and Daubert is the testimony that this was not hemp. So the issue of whether it is or is not hemp is only testimony regarding the THC percentage. So in light of Rivera, because the government bears no burden as to THC percentage, and because, as well, the defendant did not meet any – because the defendant did not meet his burden of production to show it was hemp, so the government doesn't have any burden of THC percentage, the only evidence being challenged here is evidence that's not relevant to an issue that we can properly report to the jury. The intent to distribute issue is also being challenged, and that's an element. Absolutely, Your Honor. But the Rule 16 and the Daubert is not a challenge to evidence related to the intent to distribute. So I'm not saying that Rivera precludes every argument that's being made by the defendant. I'm arguing that it precludes the Rule 16, it precludes the Daubert, and I think, in effect, it also precludes the mistrial motion because the only link between improper arguments and that element is as to THC percentage. So as to those three issues, I think Rivera precludes any relief to the defendant. Now, that does separate him aside from that. There is the issue of the lay testimony regarding the one brand of marijuana. In terms of evidence in the record on intent to distribute, is there anything that you want to highlight from Officer Venterpool's testimony? Yes, Your Honor. I think Officer Venterpool testified that in his experience – Court's indulgence. Well, Your Honor, to my best recollection, I'm trying to remember all of Officer Venterpool's testimony. I do think that he testified to the use of laundry detergent to try to smuggle it to cover the odors, which I think also provides an inference. You know, ink combined with these vacuum sealed packages, the presence of the laundry detergent. I'm not sure I understand that argument because why would somebody bringing contraband for personal use seek to disguise contraband? That's fair, Your Honor. I would agree with that. I think it's also – It's a quality issue, isn't it? I think it is. I think it's a little bit beyond – More sophistication, maybe? Maybe. Is that the point of the vacuum sealing and the detergent that if you're a personal user smuggling contraband, you're not going to be that sophisticated? Is that the point? I think that is, Your Honor. Now, I would – I think the laundry detergent is the weaker part of that argument. I think, you know, do people go around – well, you know, I think the use of vacuum sealing and that sort of smuggling, what appears to be a smuggling technique or something that, you know, people might not normally expect to see, I think could lead a jury to think that maybe this was more sophisticated. But I think I would put more emphasis on the vacuum seal than I would on the laundry detergent in the case of that argument. Thank you, Mr. Sleeper. Let's hear Mr. Kibble's rebuttal. Thank you again. Just to address a couple of quick points. The government's arguing that much of the one gram per cigarette arguments are raved. And I think it's important to understand, no, that's not true. The evidence was only admitted as personal factual testimony. It was not admitted as expert testimony. So in my brief, I'm not required to sit there and prove that it isn't. Sort of relating to prejudice for why it shouldn't have been admitted as personal factual testimony isn't necessarily an analysis of it was really expert testimony, but it was being admitted as this because it couldn't be admitted as expert testimony. Yeah, I don't understand that, though. Why isn't this something that people without any background in chemistry could testify to? Let me try to give an analogy that came to mind. I'm not sure it's apt, but could somebody testify, someone who has experience buying stamp bags of heroin on the street, could that person who has done that testify with proper foundation? How long have you done that? Well, I've bought stamp bags for three or four years. Where do you do it? I do it on the street corner. What do the bags look like? Well, they typically come in cartoon characters. I've bought stamp bags with Daffy Duck and Donald Duck and whatever. Couldn't somebody just testify to that in order to make it more likely that the stamp bag that involves some other cartoon character actually contained heroin? You don't have to be a chemist. It's just somebody's personal experience, right? And here we have someone with personal experience weighing marijuana cigarettes who also happens to be a chemist. Yes, Your Honor, and I would concede that the scenario that Your Honor just laid out would make a certain amount of sense. And in fact, the government cited this court's decision in Walker, which was a case in which there was testimony, lay testimony, that drug dealers sometimes move the locations of drug deals. However, in Walker and in Your Honor's example, there was corroboration between that testimony and the facts of this case. But corroboration just makes it stronger? Corroboration goes to weight on invisibility. With all due respect, as I read Walker and as I reasoned it through, I'm not sure that's true. Because in Your Honor's example, if somebody is caught going through the airport with half a pound of heroin and the government wants to provide that kind of testimony that Your Honor spoke of, there's no relevance to how it's normally packaged or what's in it. If that's not presented in the context of the case, the jury is actually being required to decide. But the relevance is there's three pounds, three pounds of marijuana. And the relevance is, OK, let's try to figure out how many cigarettes that would make. That's what the jury is thinking. How many cigarettes? You have someone who says, well, usually, typically, they're this. But the jury can put two and two together. But again, Your Honor just used the word typically. That's not the testimony that was given. Well, J.A. 208, what does he say? Yes. If we look at and it goes back, I would ask the court to go back and look at 207, where actually on 206, the government asked, how many grams usually? And I objected and they rephrased. And then the government asked, in essence, on 207, and typically, how many grams are included? I objected. They were told again to rephrase. And then on 208, the question was finally, Mr. Martinez, in the marijuana cigarettes that you have weighed, how many grams of marijuana did you find? And the answer was about one. But that's in the ones he had weighed. I mean, that's even more than just typically usually. It's blanket-like in there. It's this. But since there were no marijuana cigarettes in this case, how much should he put in another cigarette in another case is irrelevant. No, but the quantity in a cigarette is supremely relevant to the question of whether it's personal use quantity or distribution quantity. Only if the person can testify, frankly, to what is typically done, what is usually done, or what's the most that can be done. But he testified to what they weighed in his experience. That's it. Correct. And that may have been two. And that may have been three. So I don't think I have an answer beyond that. So if I could just have another quick couple of points. I think Judge Hardiman addressed the laundry detergent. And I think that's true. One could use laundry detergent and vacuum sealing to protect their own personal stuff. Regarding the substance of the questions asked of the government about the substance of the report, I think it's important to look at the report specifically at 423. In Section E. And in that section, the report specifically said in the note section that the mass spectra for all other peaks were not of interest. And then at trial, he was he then proceeded to testify that they were of great interest because that was the sole factor that allowed him to determine that the substance wasn't that marijuana. So the report actually contradicts what he testified to. In context, as a term of art, doesn't that just mean that they're so minuscule that they're not remarkable in the context of an expert report? One could take that point of view, but at no point did he underline his methodology. Namely, I reviewed these and found that there was no other cannabinoids. So, you know, therefore, it's marijuana, which is what he testifies to at trial. But here in his report, he indicates they're not relevant. So the idea that somehow the report disclosed what methodology was not so, if anything, if not of interest, doesn't mean not relevant. It could equally be not remarkable, not not noteworthy. Well, but it's hard to say that it's not noteworthy if that's the sole factor that determines that it's actually marijuana. And then briefly, my last point in regard to the government's Rule 16 harmlessness issue. His testimony was that he did all three tests and only at the conclusion of the third test, namely the GCMS, was he able to determine what it was. That was his testimony. So the government still bears the burden of showing that element that it's a controlled substance. So his testimony was that he had to do all three tests. I don't see how the government can say, well, he could have done only two and determined it's marijuana. He didn't testify to that. So he didn't testify to it. I don't see how the government can now play this part because we think that he could have testified to something different. He didn't. So his testimony. Thank you. Thank you very much, Mr. Campbell. Thank you, Mr. Sleeper. He says, well, I'm going to take the matter under.